UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH CARVER,<br><br>               Plaintiff,<br><br>      v.<br><br>JOSEPH LEHMAN *et al.*,<br><br>               Defendants, | Case No.  C04-5570RBL<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR**:<br>**OCTOBER 21ST, 2005** |

       This 42 U.S.C. § 1983 civil rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the court is defendant's motion for summary judgment. (Dkt. # 34).  Defendants argue there is no liberty interest in release to community custody for a person under a sentence structure like plaintiff's and that the defendants enjoy qualified immunity from damages at the very least. (Dkt. # 34).

       At issue is whether it was clearly established under the Due Process Clause of the 14th Amendment that inmates are entitled to due process before a release plan is denied when the inmate is held beyond their earned early release date and the inmate is subject to community custody or community placement.  Plaintiff has responded. (Dkt. # 36 and 37).  Defendant has replied and the matter is now ripe for review.  (Dkt. # 38).

REPORT AND RECOMMENDATION
Page - 1

## FACTS

Washington state has implemented an extremely complex sentencing system. Under this system some inmates may earn time off their sentence by programing and good behavior while incarcerated. Other inmates, like Mr. Carver, may not earn time off their sentences but instead may become eligible for placement in the community under supervision in lieu of earning good time or earned time.

Plaintiff was convicted of child molestation in the third degree in 1999. At the time he was sentenced he was given a term of community placement which was to be served at the end of his sentence in lieu of good time or earned time. (Dkt. # 34, Exhibit 2, Attachment A). RCW 9.94A.728 (2) provides:

> No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
> ...
>
> (2)(a) A person convicted of a sex offense or an offense categorized as a serious violent offense, assault in the second degree, vehicular homicide, vehicular assault, assault of a child in the second degree, any crime against persons where it is determined in accordance with RCW 9.94A.602 that the offender or an accomplice was armed with a deadly weapon at the time of commission, or any felony offense under chapter 69.50 or 69.52 RCW, **committed before July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;**
>
> (b) A person convicted of a sex offense, a violent offense, any crime against persons under RCW 9.94A.411(2), or a felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;
>
> (c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;
>
> (d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement;
> ....

At one time the plaintiff had an earned early release date (EERD) of June 27, 2002. At some point that EERD was changed to January 13, 2003. In March 2002 the plaintiff submitted a proposed release

REPORT AND RECOMMENDATION
Page - 2

1  plan requesting a specific release address in Spokane.  At the time he submitted this plan, DOC policy
2  350.200, Directive I.A.1.c.(2) (as approved by Defendant Lehman effective May 4, 2001) stated as
3  follows:

> Staff will not refer the plan if the End of Sentence Review Committee
> has determined that the offender appears to meet the definition of a
> sexually violent predator and s/he has been referred for Civil
> Commitment under RCW 71.09.

(Dkt. #37, Attachment 5, page 2).  Mr. Carver's proposed plan was denied on April 16, 2002 "since Mr. Carver has been referred for civil commitment." (Dkt. #37, Attachment 2, pages 2 and 3).   Other than the March 2002 plan, the plaintiff did not submit any additional release plans for consideration by DOC.  Mr. Carver was released from DOC on December 26, 2003, which was his maximum release date.

On December 30, 2002 the Court of Appeals, Division I, issued its In re Dutcher, 114 Wn. App. 755 (2002) decision which held that the DOC lacked authority to impose a policy which prevented an inmate from submitting a release plan and which prevented its staff from investigating the proposed plan when the inmate has been referred for civil commitment.  The policy addressed in Dutcher was the same policy in effect when the plaintiff submitted his proposed release plan.

## DISCUSSION

A.   The standard of review.

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge

or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at 630(relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

     B.    The doctrine of qualified immunity.

Government officials are given qualified immunity from civil liability under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In analyzing a qualified immunity defense, the court must determine:  (1) what right has been violated;  (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality;  and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful.  See Gabbert v. Conn, 131 F.3d 793, 799 (9th Cir.1997), overruled on other grounds, Conn v. Gabbert, 526 U.S. 286 (1999);  Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996).  The doctrine allows for mistakes in judgement and a government official will not be held liable unless the unlawfulness of the action should have been apparent.  Act Up!/Portland v. Bagley, 988 F.2d. 868 (9th Cir. 1993).

     C.    Analysis.

The court begins by noting that an inmate has no constitutional right to release before expiration of his or her sentence.  Greenholtz v. Inmates of Nebraska, 442 U.S. 1 (1979).  Nor have the Washington

State appellate courts recognized an independent state created interest in amassing early release credits. In Re Galvez, 79 Wn. App 655 (1995). This does not, however, end the court's analysis. Under the facts of this case, plaintiff had the possibility of release to a less restrictive setting subject to approval by the Department of Corrections of a release plan.

The court is aware that the interest at issue in this case must be a state created liberty interest and is not an interest found under the 14th Amendment Due Process Clause itself. Usually the court would first be required to determine whether there is in fact a state created liberty interest. The Washington State Court of Appeals, Division 1, found there to be a "limited liberty interest" in earned early release credit which requires minimal due process. In re Crowder, 97 Wn. App. 598 (1999). No hearing of any type was mandated by Crowder. Indeed, the court found that Crowder was afforded due process based on the attempts to find suitable community placement, even though his placement occurred 101 days after his earned early release date for community custody. Crowder, supra at p. 599.

In Dutcher the same appellate court emphasized it was proceeding under RAP 16.4, which did not require a finding of a constitutional violation but rather only a finding of unlawful restraint under state law. Dutcher, supra at p. 758 (fn. 3 and 4, *citing* In re Cashaw, 123 Wn. 2d 138 (1994)).

The plaintiff in Cashaw filed a personal restraint petition (PRP) which challenged the actions of the Indeterminate Sentence Review Board in setting his minimum prison term to coincide with the remainder of his court-imposed maximum sentence. The Court of Appeals granted the "PRP after concluding the Board's failure to follow its own procedural rules violated Cashaw's due process rights." Cashaw, supra, at p. 140. While the Supreme Court affirmed the grant of the PRP, it did so on the ground that "an inmate may be entitled to relief solely upon showing the Board set a minimum term in violation of a statute or regulation." Cashaw at p. 140. The Supreme Court disagreed, however, with the Court of Appeals and found "that no due process liberty interest was created here, for the Board's regulations imposed only procedural, not substantive, requirements." Cashaw at p. 140. The Supreme Court affirmed the notion that "procedural laws do not create liberty interests; only substantive laws can create these interests." Cashaw, supra at p. 145. Relief was granted In Cashaw by Washington State Supreme Court under RAP 16.4 on the basis that the Indeterminate Sentence Review Board failed to follow its own regulations.

As noted above, the Washington State Supreme Court in Cashaw was careful to grant relief only on

REPORT AND RECOMMENDATION
Page - 5

state grounds. Indeed, the State Supreme Court in <u>Cashaw</u> analyzed what is needed to find a state created liberty interest and found no due process violation in that case. The court stated:

> Liberty interests may arise from either of two sources, the due process clause and state laws. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1089 (9th Cir.1986), <u>cert. denied</u>, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The due process clause of the federal constitution does not, of its own force, create a liberty interest under the facts of this case for it is well settled that an inmate does not have a liberty interest in being released prior to serving the full maximum sentence. <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); <u>Ayers</u>, 105 Wash.2d at 164-66, 713 P.2d 88; <u>Powell</u>, 117 Wash.2d at 202-03, 814 P.2d 635.
>
> However, as indicated above, state statutes or regulations can create due process liberty interests where none would have otherwise existed. <u>See Hewitt</u>, 459 U.S. at 469, 103 S.Ct. at 870; <u>Toussaint</u>, 801 F.2d at 1089; <u>Powell</u>, 117 Wash.2d at 202-03, 814 P.2d 635. By enacting a law that places substantive limits on official decisionmaking, the State can create an expectation that the law will be followed, and this expectation can rise to the level of a protected liberty interest. <u>See Toussaint</u>, 801 F.2d at 1094.
>
> For a state law to create a liberty interest, it must contain "substantive predicates" to the exercise of discretion and "**specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow**". <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); <u>Swenson v. Trickey</u>, 995 F.2d 132, 134 (8th Cir.), <u>cert. denied</u>, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993). **Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot.**

<u>In Re Cashaw</u>, 123 Wn 2d at 144 (emphasis added).

The Department of Corrections has been mandated by statute to implement a system that allows for the possibility of early release. For some inmates their release is automatic when they reach their earned early release date because they have no supervision following incarceration. Inmates like the plaintiff, who were sentenced to community placement or community custody, cannot earn this reduction in sentence. Instead, they earn a possibility of being placed on community placement or community custody at the discretion of the Department of Corrections. Their release is not automatic.

RCW 9.94A.728(2)(d) grants the department the ability and the discretion to deny a release plan for any person who would receive community custody if the department determines the plan may violate conditions of a sentence or supervision, may place the offender at risk to re-offend, or presents a risk to victim or community safety. Thus, whatever limits have been placed on the department are not outcome determinative and under the analysis used in <u>Cashaw</u> there would be no state created liberty interest. By way of example, the discretion of the department has not been limited when the department considers how

REPORT AND RECOMMENDATION
Page - 6

close to a school or day care an offender may reside.  The department still has a significant degree of discretion in granting or denying release to community placement or community custody.  The statute itself states "The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement." RCW 9.94A.728 (2)(d).

In <u>Dutcher</u>, the Court of Appeals proceeded pursuant to RAP 16.4 (Personal Restraint Petition - Grounds for Remedy).  The court used a standard of review which did not require the finding of a constitutional violation.  The ruling in <u>Dutcher</u> that the department must follow the state statutory system and consider plans on the merits does not equate to a finding of a state created liberty interest in release and the holding in <u>Dutcher</u> did not eliminate the departments' discretion. Further, <u>Dutcher</u> was not decided until December of 2002, over nine months after plaintiff's only release plan was denied.

In 1995 the United States Supreme Court examined the methodology used to determine if state laws or regulations created liberty interests in a prison context and the Court adopted a new approach. <u>Sandin v. Conners</u>, 515 U.S. 472 (1995).  As plaintiff notes, the Court stated  "[t]hese interests will be generally limited to freedom from restraint which impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  (Dkt. # 36, page 7).  The decision in <u>Sandin</u> was a reaction to the practice of combing state regulations for mandatory language to find liberty interests.

It is settled that an inmate has no constitutional right to release before expiration of the court imposed sentence. <u>Greenholtz v. Inmates of Nebraska</u>, 442 U.S. 1 (1979).  Therefore, the refusal to investigate a proposed plan does not lead to violation of a constitutionally protected right.  There is no change in the incidents of normal prison life and the inmate is held until the expiration of his sentence. When the court considers that at the time of sentencing plaintiff was not allowed the possibility of having any unconditional release, this result is not overly harsh.  An inmate has no constitutional right to parole or to any type of automatic release to community custody.

Plaintiff's citation to cases where the inmates had the ability to truly earn early release and shorten their sentence is of no help or guidance to the court.  Cases like <u>Wolf v McDonnell</u>, 418 U.S. 539 and <u>In Re Anderson</u>, 112 Wn. 2nd. 546 (1989) deal with a liberty interest in release that Mr. Carver never possessed.  The statute governing plaintiff's sentencing precluded him from earning early release. The

REPORT AND RECOMMENDATION
Page - 7

court today does not find a state created liberty interest in having a release plan considered.

D.   <u>Defendants Robert and Acker</u>.

Plaintiff has failed to come forward with any evidence to show personal participation by Defendants Roberts or Acker. The allegations in the amended complaint (Dkt. # 17) are not supported by any evidence. At the summary judgment stage plaintiff, as the nonmoving party, must present specific, significant probative evidence. Fed, R, Civ. P. 56 (e). Plaintiff has failed to present any evidence showing either of these defendants played any part in enacting the policy that precluded him from being considered for release. They are entitled to dismissal for lack of personal participation.

E.   <u>Qualified Immunity</u>.

The plaintiff submitted only one proposed release plan and that was done in March 2002. This plan was denied on April 16, 2002. Under the doctrine of qualified immunity, officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. fitzgerald</u>, 457 U.s. 800, 818 (1982). Although this court has concluded that there was no constitutional violation, the issue of qualified immunity will also be addressed. Therefore, the court must determine whether the law governing the defendant's conduct was clearly established. This court finds that it was not and that the defendant Lehman is entitled to qualified immunity.

The case relied upon by the plaintiff, <u>In re Dutcher</u>, was not decided until December 30, 2002, over 8 months after the plaintiffs release plan was denied. Prior to the court's decision in <u>Dutcher</u> the law was not clearly established that the portion of DOC Policy 350.200 which prevented consideration of release plans was invalid. Accordingly, the defendants' motion for summary judgment should be **GRANTED**.

CONCLUSION

For the reasons stated above the court should **GRANT** defendant's motion for Summary Judgment. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to

set the matter for consideration on **OCTOBER 21st, 2005**, as noted in the caption.

DATED this 26th day of September, 2005.

                                            Karen L. Strombom
                                            United States Magistrate Judge